# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIET MIKE NGO, | CASE NO. 1:04-cv-05301-OWW-MJS (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| SCOTT P. RAWERS, et al., | (ECF No. 48) |
| Defendants. | OBJECTIONS DUE WITHIN TWENTY DAYS |

**I.    INTRODUCTION**

Plaintiff Viet Mike Ngo ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The action proceeds on Plaintiff's February 17, 2004 Complaint in which Plaintiff alleges that Defendants Rawers, Korstjens, Ramirez, and Wilson retaliated against Plaintiff for filing an inmate grievance on December 19, 2002. (ECF Nos. 1 & 13.)

1

On August 13, 2010, Defendants Rawers, Ramirez, and Wilson[1] filed a Motion for Summary Judgment, arguing: (1) Defendants Ramirez and Wilson did not retaliate against Plaintiff; (2) Defendant Rawers was not involved with Plaintiff's placement in administrative segregation and has no supervisorial liability; and (3) all Defendants are entitled to qualified immunity. (ECF No. 48.)  Plaintiff filed an opposition on October 8, 2010. (ECF No. 51.) Defendants filed a reply on November 16, 2010. (ECF No. 55.)

## II.  **FACTS**

The facts, viewed in the light most favorable to Plaintiff, are as follows:

On December 19, 2002, Plaintiff filed a citizen's complaint against Sergeant Stinson, a prison official, for unprofessional conduct. (Pl.'s Compl. p. 3.)  The following day, at Defendant Ramirez's request (and because of a malfunctioning recorder), Plaintiff made two videotaped statements about the incident. (Ramirez Decl. ¶ 3.)

Plaintiff received a California Department of Corrections and Rehabilitation ("CDCR") form 114-D stating that he was being placed in administrative segregation ("ad-seg") because he had filed a grievance against a staff member.  The placement was ordered by Defendant Ramirez and approved by Defendant Wilson.  At the time of this event, prison policy dictated that when an inmate made a staff complaint against a correctional officer, the inmate and the officer were to be separated while the complaint was investigated. (Wilson Decl. ¶ 3; Ramirez Decl. ¶ 5.)  Ramirez informed Plaintiff that

---

[1] Though the Court previously found that Plaintiff had stated a claim against Defendant Korstjens, he has never appeared in this action and it does not appear he was ever served. (ECF No. 17.) The Court ordered Plaintiff to show cause why Defendant Korstjens should not be dismissed. (ECF No. 58.) Plaintiff has stated that he does not object to Korstjens dismissal.  Accordingly, the Court will recommend that Plaintiff's claims against Korstjens be dismissed.

2

he would be placed in ad-seg to avoid interaction between Plaintiff and Sgt. Stinson, who worked in the facility where Plaintiff was then housed. (Ramirez Decl. ¶ 7; Wilson Decl. ¶ 4.)

While in ad-seg, Plaintiff was placed in a cell which was lit with electric lights twenty-four hours a day and clothed in only a t-shirt, boxer shorts, and a pair of socks. (Pl.'s Decl. ¶ 4.) He was denied access to his property, including religious and legal materials. (Id.) He was not allowed to shower. The room temperature was so low that he was forced to huddle in bed. As a result of his placement in ad-seg, Plaintiff's work group changed from A-1, a classification with full privileges, to D-1, a significantly more restrictive category. (Pl.'s Decl. ¶ 4.)

On December 23, 2002, Plaintiff was released to a different housing unit where he would not risk contact with Stinson. (Ramirez Decl. ¶ 8.) Plaintiff was released from ad-seg without an administrative review hearing. (Pl.'s Decl. ¶ 7.)

On January 16, 2003, Plaintiff filed an administrative appeal and a citizen's complaint against Defendant Ramirez for his placement in ad-seg. Defendant Korstjens denied this appeal on February 10, 2003. Plaintiff's appeal at the second level of review was denied by Defendant Rawers. (Rawers Decl. ¶ 5.)

These facts form the basis for Plaintiff's claim that his placement in ad-seg was in retaliation for the exercise of his First Amendment rights.

### III.   LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as

3

a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be taken as true, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## IV.   ANALYSIS

### A.   Claims Against Defendants Ramirez and Wilson

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Evaluating the claims in the light most favorable to Plaintiff, he could be found to have put forth sufficient disputed facts to satisfy the first four of the above five criteria insofar as necessary to respond to this Motion for Summary Judgment. However, there is essentially unrefuted evidence before the Court that the Defendants' complained-of

action was designed to and did reasonably advance a legitimate correctional goal.

In their Motion for Summary Judgment, Defendants Ramirez and Wilson contend that Plaintiff's placement in ad-seg was not an adverse retaliatory action, but rather served legitimate correctional purposes. Defendants present evidence demonstrating that Plaintiff's placement was a temporary measure, enacted pursuant to prison policy, solely for the purpose of preventing contact between Plaintiff and the prison official against whom Plaintiff had filed a grievance. That is to say, Defendants assert that Plaintiff's placement in ad-seg served the legitimate penological interest in ensuring safety and security of inmates and the institution. As soon as alternate housing was available (after approximately three days), Plaintiff was moved out of ad-seg and released to the general population.

Defendants have submitted admissible evidence showing that Plaintiff was placed in ad-seg pursuant to an existing policy under which prisoners who filed grievances against staff members were removed from the area where the staff member was employed. The Ninth Circuit has found that "preserving institutional order, discipline, and security are legitimate penological goals." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). Moreover, "maintaining the integrity of an investigation into serious institutional misconduct is a legitimate penological interest." Bryant v. Cortez, 536 F.Supp.2d 1160, 1169 (C.D. Cal. 2008); see also Draper v. Harris, 245 Fed. App'x 699 (9th Cir. 2007). Thus, Defendants have met their initial burden of putting forth a legitimate correctional goal which justified Plaintiff's placement in ad-seg.

Because Defendants have presented affirmative evidence negating an essential

element of Plaintiff's claim, Plaintiff, as the nonmoving party, "must do more than simply deny the veracity of everything offered." Matsushita, 475 U.S. at 586. To avoid summary judgment, Plaintiff must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere conclusory allegations without more are insufficient to support a Section 1983 claim or withstand summary judgment. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1984). In a case such as this, the prisoner must show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

In his Opposition, Plaintiff alleges a dispute as to whether his placement in ad-seg advanced legitimate penological goals and was a narrowly tailored solution.[2] Plaintiff argues that there was no prison policy requiring the separation of a prisoner from the staff member against whom he filed his grievance. In support, Plaintiff asserts that in June or July 2003, a CDC Ombudsman told him he had recommended that Avenal State Prison stop placing prisoners in ad-seg after they filed a grievance. (Pl.'s Decl. ¶ 2.) That claim, even if admissible, persuasive and accepted as true, would not counter Defendants' evidence that, as of December 2002, the prison had a legitimately motivated separation requirement. Plaintiff has failed to offer evidence disputing the existence in December 2002 of the policy relied upon by Defendants to place Plaintiff in ad-seg.

---

[2] Plaintiff repeatedly refers to the 602 grievance form and the CDCR 114-D form attached to his Complaint. There are no attachments to Plaintiff's Complaint. (ECF No. 1.)

8

Moreover, policy aside, Defendants have stated that they decided to place Plaintiff in ad-seg to separate him from Stinson during the investigation into Plaintiff's claims. They felt Plaintiff's allegations against Stinson were serious enough that contact between Plaintiff and Stinson could be viewed as threatening and possibly retaliatory. (ECF No. 48-5, P.3; Def. Ramirez Decl. ¶ 7.) Thus, even without a policy, Plaintiff's placement in ad-seg for the purpose of preserving the integrity of the investigation served a legitimate correctional goal. See Bryant, 536 F.Supp.2d at 1169 (maintaining the integrity of an investigation is a legitimate correctional goal).

Plaintiff also notes that the prison had five different yards; each yard contained five housing units. (Pl.'s Decl. ¶ 10.) Thus, Plaintiff argues, alternatives to ad-seg existed for separating him from Stinson and, thus, the placement in ad-seg was not narrowly tailored to achieve the correctional goal proffered by Defendants. However, the Ninth Circuit has held that the court is to "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807. The Supreme Court has disapproved of excessive judicial involvement in the day-to-day prison management because it "often squanders judicial resources with little offsetting benefit to anyone." Id. (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

Assuming alternatives existed for housing Plaintiff in an area where he would not interact with Stinson, the Court is not in a position to second-guess such relatively minor administrative decisions made by the prison. In this case, Plaintiff was in ad-seg for only three days and Plaintiff was released when another area where he would not have contact

9

with Stinson was made available. (Wilson Decl. ¶ 5.) The prison has no obligation to chose other, arguably more attractive, housing options; the existence of other options does not mean that Defendants' course of action was not appropriately and narrowly tailored to meet overall prison needs.

Plaintiff also states, based on earlier ad-seg placement, that is was highly unusual for him to have been released from ad-seg by "Administrative Review" and without having been taken before the Institutional Classification Committee. Plaintiff believes this demonstrates circumstantial evidence that Defendant Wilson's actions were retaliatory. Plaintiff has failed to submit any evidence suggesting that an ICC hearing before being released from ad-seg is standard, that it was contrary to policy to release him without an ICC hearing, or that he suffered any negative consequence by having been released without such a hearing. As a matter of logic, Plaintiff's release from ad-seg after only three days and without formal hearing procedures could well be viewed as evidence that Plaintiff's placement in ad-seg was not punitive.

Considering the deference which must be afforded prison officials in the day-to-day management of their facilities, the Court cannot find that Plaintiff's placement in ad-seg for three days was not a proper and narrowly tailored response to the circumstances and in fact in Plaintiff's best interests. Plaintiff has failed to show a material factual dispute as to whether his placement in ad-seg was narrowly tailored to serve a legitimate correctional goal.[3] Thus, Plaintiff's retaliation claim against Defendants Ramirez and Wilson fails and

---

[3] Plaintiff also disputes that he felt threatened by Sgt. Stinson and that he had to be placed in ad-seg to separate the two. However, his subjective belief as to the threat posed by Sgt. Stinson does not

10

summary judgment should be granted.

### B. Defendant Rawers

Plaintiff does not allege that Defendant Rawers was personally involved in his ad-seg placement. Because the Court has determined that Plaintiff's retaliation claim against Defendants Ramirez and Wilson does not survive summary judgment, Defendant Rawers cannot be held liable based on supervisory liability. MacKinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995). The only action alleged against Defendant Rawers is that he denied Plaintiff's second level appeal on his grievance. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). Thus, summary judgment is also appropriate for the claims against Defendant Rawers.

## V. CONCLUSION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Korstjens be dismissed based on evidence that he is deceased and based on Plaintiff's non-opposition to the dismissal;

2. Defendants' Motion for Summary Judgment, filed August 13, 2010, be GRANTED; and

3. Judgment be entered in favor of Defendants Rawers, Ramirez, and Wilson and the case be closed.

///

---

negate the prison's interest in protecting him and in conducting a fair and reasonable investigation into his grievance.

11

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty (20) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 19, 2011           /s/ *Michael J. Seng*
ci4d6                                UNITED STATES MAGISTRATE JUDGE